**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GARY WAYNE STRICKLAND, 01221143,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:07-CV-550-M** |
| | ) | **ECF** |
| **NATHANIEL QUARTERMAN,** | ) | |
| **Director TDCJ-CID,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**FINDINGS AND CONCLUSIONS**

**I.     NATURE OF THE CASE**

Petitioner filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"). Respondent Nathaniel Quarterman is Director of the TDCJ-CID.

**II.     PROCEDURAL BACKGROUND**

Petitioner challenges his conviction for aggravated assault with a deadly weapon. *State of Texas v. Gary Wayne Strickland*, No. 21,449 (196th Jud. Dist. Ct., Hunt County, Texas, Feb. 4, 2004). He was sentenced to twelve years confinement.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge -Page 1**

On March 28, 2005, the Sixth District Court of Appeals affirmed Petitioner's conviction. *Strickland v. State*, No. 06-04-00063-CR, 2005 WL 693306 (Tex. App. – Texarkana, Mar. 28, 2005). On January 25, 2006, the Court of Appeals denied Petitioner's petition for discretionary review. *Strickland v. State*, PDR No. 0801-05 (Tex. Crim. App. 2006).

On January 25, 2007, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Strickland*, No. 66,933-01. On May 9, 2007, the Court of Criminal Appeals denied the application without written order.

On March 12, 2007, Petitioner filed this federal petition. He argues:

1.      He received ineffective assistance of trial counsel when counsel:

     (a)      failed to effectively cross-examine and/or impeach Marsha and David Nicholson and Anne Renee McDonald;

     (b)      performed under a conflict of interest;

     (c)      failed to call certain witnesses;

     (d)      failed to require the state to meet its burden of proof, and failed to advise Petitioner of the basic elements necessary for an aggravated assault conviction;

     (e)      failed to challenge the court's jury charge;

     (f)      failed to object to the state's evidence of extraneous offenses and prior misconduct;

     (g)      failed to familiarize himself with Petitioner's criminal history;

(h)     failed to object or move to suppress the state's color photos, failed to move for a continuance to prepare a defense against the photos, and failed to use the photos to discredit witnesses;

(I)     called Petitioner to testify without consulting, instructing, or warning him and without assisting him or intervening to protect him from the prosecutor's attack;

(j)     failed pursue forensic testing to attack David Nicholson's testimony regarding the extent of his injuries.

2.      Petitioner received ineffective assistance of appellate counsel when counsel:

(a)     failed to attack Petitioner's conviction on the basis of insufficiency of the evidence or on any of the above-listed claims;

(b)     failed to secure testimony from trial counsel to support Petitioner's ineffective assistance of trial counsel claims;

(c)     argued a meritless claim;

(d)     had no intention of prosecuting a viable appeal; and

(e)     failed to pursue forensic testing to attack David Nicholson's testimony regarding the extent of his injuries.

## III.     FACTUAL BACKGROUND

The following factual background is taken from the opinion of the Sixth District Court of Appeals.

[David] Nicholson testified he was gathering tools from his wife's van, which was parked in front of an acquaintance's house.  The house was across the street from [Petitioner's].  Nicholson said he was kneeling or crouching down when he was hit from

above on his head.  Nicholson was hit two or three more times in the head and face.  At one point, he was able to see his attacker, [Petitioner], smashing him in the face with a piece of brick or cinder block.  Nicholson's wife testified she came out of the house and jumped on [Petitioner's] back, trying to get him to stop attacking Nicholson.  The investigating officer testified Nicholson exhibited several wounds, which required medical attention.  The officer stated that Nicholson had blood on his face and mouth, and that he administered first aid and called for an ambulance.  Although Nicholson did not lose consciousness, communication was difficult and Nicholson was "out of it."  Nicholson and his wife both told the officer that [Petitioner] had attacked Nicholson.  Nicholson said [Petitioner] had accused him of stealing from [Petitioner].  Nicholson testified he declined to go the hospital after the attack, but did go later that night when he started blacking out.

[Petitioner] testified he approached Nicholson regarding a tool [Petitioner] contended that Nicholson had stolen from him. [Petitioner] said Nicholson stood up with a baseball bat, and, in self-defense, he hit Nicholson in the mouth.  According to [Petitioner], the two fought for as long as twenty minutes. [Petitioner] said that he was injured in the fight and that his eyebrow was torn off and he suffered cuts.  He said his friend, Anne Renee McDonald, came to his house after the fight and administered first aid, including binding his cuts with "Crazy Glue" and treating his wounds with peroxide.  However, when McDonald testified, she denied administering such first aid and said that [Petitioner] was not seriously injured.  She said she saw no blood on [Petitioner] and his eyebrows "looked fine."

*Strickland v. State*, No. 06-04-00063-CR (Tex. App. – Texarkana March 28, 2005) at 2-3.

## IV.  DISCUSSION

**1.  Standard of review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the

AEDPA), 28 U.S.C. § 2254 provide:

(d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2049 (1997). The petition in this case is subject to review under the AEDPA.

**2.      Ineffective assistance of counsel**

Petitioner raises multiple ineffective assistance of counsel claims. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**(A)     Conflict of Interest**

Petitioner argues his counsel was ineffective because of a conflict of interest. He states his attorney previously represented Marsha Nicholson's parents in a child custody proceeding. He claims this conflict prevented his attorney from adequately cross-examining Marsha Nicholson.

When a claim of ineffective assistance of counsel is based on an alleged conflict of interest, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance, thereby rendering the verdict unreliable. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *see also, Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 1244 and n.5 (2002). If a petitioner shows that his attorney's conflict of interest actually affected the adequacy of his representation, he need not demonstrate prejudice before he may obtain relief. *Cuyler*, 446 U.S. at 349-50.

In this case, Petitioner failed to raise his conflict of interest claim at trial. Petitioner must therefore show that an actual conflict of interest adversely affected his lawyer's performance, thereby rendering the verdict unreliable. *Id*. at 348.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge -Page 6**

An "actual conflict of interest exists if 'counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing.'" *United States v. Rico*, 51 F.3d 495, 508, 509 (5th Cir. 1995) (citing *United States v. Lyon*, 703 F.2d 815, 820 (5th Cir. 1983)). However, "[a] mere possibility of conflict does not raise a presumption of prejudice: 'until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Hernandez v. Johnson*, 108 F.3d 554, 560 (5th Cir. 1997) (quoting *Cuyler*, 446 U.S. at 350).

In this case, there is no evidence that defense counsel was currently representing Marsha Nicholson, or that he had ever represented her. Defense counsel had represented her parents in an action adverse to Marsha Nicholson. Petitioner has not shown his counsel acted under a conflict of interest. His claim should be denied.

**(B)    Witness Examination**

Petitioner argues his counsel was ineffective for failing to adequately cross-examine David and Marsha Nicholson, and for choosing to call Anne Renee McDonald as a witness.

<u>(1) David Nicholson</u>

Petitioner argues his counsel failed to adequately show David Nicholson's bias and his motive to shift suspicion to Petitioner. Petitioner also argues that David Nicholson's testimony regarding his injuries was inconsistent with the photos of his injuries and the medical records.

The record shows that defense counsel thoroughly cross-examined Nicholson. (Trial Tr. Vol 1 at 22-53). Defense counsel questioned whether Nicholson was the aggressor by asking whether he had tools or a stick in his hand at the time Petitioner hit him. (*Id*. at 35-36). Counsel

questioned Nicholson about pending criminal charges against him for theft. Counsel also asked whether another man, and not Petitioner, could have been the person who hit Nicholson. (*Id*. at 34-35). Further, the photographs of Nicholson's injuries taken by police were admitted into evidence. Petitioner does not explain how Nicholson's testimony was inconsistent with these photos. The jury was able to compare Nicholson's testimony with the photographs. Petitioner's claim should be denied.

    <u>(2) Marsha Nicholson</u>

    Petitioner argues his counsel was ineffective because he did not effectively cross-examine Marsha Nicholson. He states Ms. Nicholson's trial testimony was inconsistent with her statement to police that she witnessed the attack and that Petitioner was the assailant. At trial, Ms. Nicholson pled the Fifth Amendment when asked if she could identify her husband's assailant. (Trial Tr. Vol. 1 at 103). Petitioner has not stated what his counsel could have done to force Marsha Nicholson to testify after she invoked her Fifth Amendment rights. Further, her invocation of the Fifth Amendment likely benefitted Petitioner, since on the day of the incident she told police that Petitioner was the person who attacked her husband. (Pet'r March 16, 2007, Mot. Admitting Relevant Evidence, Ex. 2).

    <u>(3) Anne Renee McDonald</u>

    Petitioner argues his counsel should not have called Anne McDonald as a witness because her testimony was adverse to him. Although McDonald contradicted Petitioner's testimony that she administered first-aid to him after the assault, McDonald did corroborate Petitioner's claim that David Nicholson had a bat or stick in his hand at time of the assault. (Trial Tr. Vol. 1 at 179). She was the only witness who corroborated this testimony. She also

testified that Petitioner was a good person and not the type of person who would attack someone. (*Id*. at 185-86). Petitioner has not shown his counsel was constitutionally deficient in calling this witness.

**(C)      Extraneous Offenses**

Petitioner argues his counsel was ineffective because he failed to object to the introduction of his prior criminal history on the following grounds: (1) the state did not specify the date, time, place and nature of the criminal conduct; (2) the state did not prove that Petitioner committed these crimes by a preponderance of the evidence; (3) the state did not provide Petitioner with notice of its intent to introduce this evidence; and (4) the evidence was irrelevant and unauthenticated.

The record shows that on direct examination, defense counsel asked Petitioner whether he had any prior felony convictions or any convictions for crimes of moral turpitude. (Trial Tr. Vol. 1 at 139). Petitioner stated that he received deferred adjudication in California in the 1980s. (*Id*. at 140-41). He stated that his understanding was that the deferred adjudication did not result in a conviction. (*Id.* at 141).

Out of the presence of the jury, the prosecutor informed the court that it had a computer print-out showing that in 1984, Petitioner had two felony convictions in California.[1] (*Id*. at 143-44). One conviction was for attempted robbery; the other conviction was for attempted burglary. The NCIC report also showed that in 1984, Petitioner was convicted of misdemeanor forgery. On cross-examination, the prosecutor asked Petitioner about these convictions. (*Id*. at 146-48).

---

[1]The print-out was from the National Crime Information Center ("NCIC").

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge -Page 9**

Petitioner responded that he received deferred adjudication for the two felonies and that he did not recall a misdemeanor conviction for forgery. (*Id*. at 146-47).

When a defendant takes the stand, he may be impeached in the same manner as any other witness. *Hammett v. State*, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986). Under Texas law, if a defendant testifies, and leaves a false impression regarding his past criminal history, the defendant has "opened the door" to an inquiry into the truthfulness of his testimony. *Martinez v. State*, 728 S.W.2d 360, 362 (Tex. Crim. App. 1987).

In this case, Petitioner testified that he had no prior felony convictions and no convictions for crimes of moral turpitude. By his testimony, the Petitioner opened to door to being questioned regarding the truthfulness of this testimony. Petitioner's claim should be denied.

**(D)     Photographs**

Petitioner argues his counsel was ineffective for failing to object or move to suppress the state's photographs because the state did not reveal them to the defense before trial. He also argues his counsel failed to move for a continuance to inspect the photos and crime scene.

Petitioner has offered no evidence that the state did not provide the photographs to the defense prior to trial. Petitioner's counsel filed a pre-trial motion for discovery, and nothing in the record shows that the state did not comply with this motion. (Clerk's Record at 15). This claim is therefore conclusory and should be denied. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings). Further, Petitioner fails to state a basis for suppressing the photographs.

On the other hand, Petitioner argues his counsel was ineffective because he did not use the photographs to discredit witnesses. Petitioner states the photographs show the Nicholsons'

van was not in the driveway where the Nicholsons testified the assault occurred.  He states this shows the Nicholsons testified untruthfully.  The Nicholsons both testified, however, that they left the scene after the incident.  (Trial Tr. Vol. 1 at 49, 104).  Petitioner fails to show that his counsel was constitutionally deficient regarding this issue.

**(E) Criminal History**

Petitioner argues his counsel failed to familiarize himself with Petitioner's criminal record.  The information regarding Petitioner's California cases, however, would not have been available to defense counsel unless Petitioner informed his counsel of these crimes.  Unlike the state, Petitioner has not shown that his counsel had any access to the NCIC database.

Petitioner also argues that because his counsel was unfamiliar with his criminal history, he was ineffective in cross-examining David Nicholson's punishment phase testimony.  In punishment, Nicholson testified that Petitioner told him he avoided an attempted murder charge by shooting a potential witness in the foot and causing that witness not to testify.  Defense counsel, however, chose to call Petitioner to rebut David Nicholson's statements.  Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy.  *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  Petitioner claim is without merit and should be denied.

**(F)     Calling Petitioner as a Witness**

Petitioner argues his counsel was ineffective for calling Petitioner to testify "without consultation/instruction/warning/admonition."  (Pet. Mem. at 36).

The record shows that defense counsel questioned Petitioner regarding whether he wanted to testify.  The transcript states:

| DEFENSE COUNSEL: | And you know on your own and from discussions with me that you cannot be compelled, like Mr. Tittle said, you cannot – at jury voir dire yesterday, you cannot be compelled by anyone to testify in this case.  Do you understand that? |
|---|---|
| PETITIONER: | Yes, I do. |
| DEFENSE COUNSEL: | And just because I called you as a witness just now, I can't force you to testify and you know that, don't you? |
| PETITIONER: | Yes, sir. |
| DEFENSE COUNSEL: | Okay.  Is it your desire to testify? |
| PETITIONER: | Yes, sir. |
| DEFENSE COUNSEL: | And you understand that you are, by testifying, that you are waiving certain rights afforded to you as an accused, of both the Constitution of the United States of America and Constitution of the State of Texas? |
| PETITIONER: | Yes, sir.  I do. |
| DEFENSE COUNSEL: | And are you willing to waive those rights? |
| PETITIONER: | Yes, sir. |

(Trial Tr. Vol. 1 at 111-112).  The record clearly shows that Petitioner chose to testify on his own behalf.

Petitioner also claims his counsel left him at "the mercy of the State with no assistance at all and no intervention or attempt at all."  (Pet. Mem. at 36).  The record shows that defense counsel raised objections to the admissibility of extraneous offense evidence and made evidentiary arguments to the court.  (Trial Tr. Vol. 1 at 143-144).  Petitioner has not identified any non-frivolous objection or argument that his counsel should have made.  Petitioner's claim should be denied.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge -Page 12**

**(G) Require State to Meet its Burden**

Petitioner argues his counsel failed to "require" the state to meet its burden of proof. (Pet. Mem. at 22). He argues the state failed to prove use of a deadly weapon, use of force intended to cause serious bodily injury, and aggravated assault rather than simple assault. (*Id*. at 22).

The record shows that counsel actively challenged the state's case. Counsel thoroughly cross-examined both David Nicholson and police officer Hamilton as to whether the cinder block was used as a weapon. (Trial Tr. Vol. 1 at 38-47; 76-77). Counsel also moved for a directed verdict after the state closed, arguing that David Nicholson's testimony was not credible and that the evidence was insufficient to sustain a conviction. (*Id*. at 107-08). The court denied the motion. (*Id*. at 108).

Additionally, the jury charge properly instructed the jury on the elements of aggravated assault with a deadly weapon, the elements of self-defense and the state's burden to prove the offense beyond a reasonable doubt. (Clerk's Record 39-43); Tex. Penal Code §§ 2.01 (Proof Beyond a Reasonable Doubt); 22.01(a)(1) (Aggravated Assault); 1.07(17) (Deadly Weapon); 9.31 (Self-Defense) (West 2002).

During closing arguments, defense counsel argued that Petitioner acted in self-defense and reminded the jury of testimony that supported Petitioner's version of the incident. (Trial Tr. Guilt/Innocence at 9-13). Defense counsel reminded the jury of the presumption of innocence and the standard of reasonable doubt, and asked them to acquit Petitioner. (*Id*. at 13). Petitioner's claim should be denied.

Petitioner also argues his counsel failed to advise him of the elements necessary to prove aggravated assault. Petitioner's claim, however, is conclusory. Moreover, the indictment was read to Petitioner in court prior to commencement of trial. (Trial Tr. Vol. 1 at 7). Petitioner's claim is without merit and should be denied.

### (H)    Jury Charge

Petitioner argues his counsel was ineffective for failing to object to misstatements of the law in the jury charge. He also states he was entitled to an instruction on self-defense. As stated above, the jury charge correctly stated the elements for aggravated assault, a deadly weapon, and self-defense. His claims are therefore without merit.

Petitioner also argues the jury charge contained an instruction on parole law, but not good conduct time. While the charge failed to instruct the jury on good conduct time, Petitioner has failed to show that this failure harmed him. The good conduct time instruction is designed to benefit the state, not the defendant. *See Arnold v. State*, 786 S.W.2d 295, 298-300 (Tex. Crim. App. 1990) ("[o]bviously, the only purpose in allowing jurors to consider the 'existence' of parole law and good conduct time is to inform their assessment of punishment; the instruction is 'clearly designed to increase the sentence.'" (citations omitted). Further, the jury was instructed that it could not consider how parole law or good conduct time would be applied to Petitioner. (Clerk's Record at 45-46). Petitioner's claim should be denied.

### (I)    Failed to Call Witnesses

Petitioner argues his counsel was ineffective because he failed to call certain witnesses to testify at trial. Petitioner testified during his motion for new trial that he asked his attorney to call Tony Lucas, James Brown, Amber Felts and Pam Payne as witnesses.

(1) Tony Lucas

Tony Lucas testified at the motion for new trial that prior to the assault, he saw David Nicholson with a bat and heard Nicholson say he was going to kill Petitioner. (Mot. for New Trial at 14). He stated Petitioner's co-counsel talked to him prior to trial and that if counsel had subpoenaed him, he would have testified at trial. (*Id*. at 16). Lucas, however, did not testify as to what information he provided to Petitioner's counsel. There is no evidence that he told Petitioner's counsel that he saw Nicholson with a bat or heard him say he was going to kill Petitioner. Lucas also testified that he did not see the assault. (*Id*. at 15). Petitioner has failed to show his counsel was constitutionally ineffective for failing to call Lucas as a witness.

(2) James Brown

James Brown testified that he believed David Nicholson stole Petitioner's tools. (*Id*. at 19). Brown, however, could not say "factual(ly)"whether Nicholson stole the tools. (*Id*. at 20). Brown stated that defense counsel never contacted him, but that he would have testified at trial if called. Brown, however, was not present during the assault. (*Id*. at 19). To the extent Petitioner was trying to show that Nicholson lied about not stealing Petitioner's tools, Petitioner has failed to show that but for Brown's testimony, there is a reasonable probability the result of the trial would have been different.

(3) Amber Felts

Amber Felts testified that after the assault, David Nicholson came to her house. (*Id*. at 23). She stated that although she saw blood on him, and she knew that he went to the hospital the night of the assault, she did not believe Nicholson was seriously injured. (*Id.* at 23). She also testified, however, that she did not see the assault. *Id*. She stated that defense counsel never

contacted her, but that she would have testified at trial if counsel had called her. (*Id*. at 24). Petitioner has failed to show that had Felt's testified, there is a reasonable probability that the results of the trial would have been different.

(4) Pam Payne

Pam Payne testified that David Nicholson told her he stole property from Petitioner. (*Id*. at 27). She also stated that Nicholson told her that during the assault, he picked something up from the ground and swung it at Petitioner. (*Id*. at 27-28). She stated she was not contacted by defense counsel, but that she would have testified at trial. Payne, however, did not witness the assault. (*Id*. at 29). Petitioner has failed to show that if defense counsel had called this witness to testify, there is a reasonable probability the result of the trial would have been different. His claim should be denied.

**(J)       Forensic Testing**

Petitioner argues his trial and appellate counsel were ineffective for failing to conduct forensic testing to show that David Nicholson was not seriously injured, and that the cinder block was not used as a weapon.[2] Petitioner, however, has failed to show that forensic testing of the cinder block would establish that it was not used as a weapon. Also, although he submitted copies of David Nicholson's medical records, these records show that Nicholson went to the hospital on the day of the assault. (Pet'r March 16, 2007, Mot. Admitting Relevant Evidence, Ex. 6). The records show Nicholson had injuries to his forehead, mouth, back of the head and

---

[2]Respondent argues this claim is procedurally barred because Petitioner failed to raise it in his state habeas petition or his PDR. Petitioner argues the claim is part of his argument that counsel failed to sufficiently challenge David Nicholson's credibility. (Traverse at 2-3). Liberally construing the petition, the Court will consider this claim on the merits.

neck.  *Id.*  Petitioner has not established that these records contradict Nicholson's testimony.  His claims should be denied.

### (K)    Failed to Raise Claims

Petitioner argues his appellate counsel was ineffective because he failed to raise a sufficiency of the evidence claim, and he failed to raise the above ineffective assistance of trial counsel claims.

Under Texas law, a person commits aggravated assault if the person commits assault and:

(1) causes serious bodily injury to another; including the person's spouse; or

(2) uses or exhibits a deadly weapon during the commission of the assault.

TEX. PENAL CODE § 22.02.

A deadly weapon is defined as:

>    (A)    a firearm or anything manifestly designed, made or adopted for the purpose of inflicting death or serious bodily injury; or
>
>    (B)    anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE §1.07(a)(17).

In this case, David Nicholson testified that Petitioner assaulted him with a cinder block. (Trial Tr. Vol. 1 at 13-14).  The jury determined that the cinder block constituted a deadly weapon.  (Clerk's Record at 44).  Petitioner has not shown that his counsel was ineffective for failing to raise a sufficiency of the evidence claim.

Additionally, as discussed above, Petitioner's ineffective assistance of trial counsel claims are without merit.  Appellate counsel was not required to make frivolous arguments.  *See Gibson*, 55 F.3d at 179.  Petitioner's claim should be denied.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge -Page 17**

**(L) Trial Counsel Testimony**

Petitioner argues his appellate counsel was ineffective for failing to obtain testimony from his trial counsel to support his ineffective assistance of trial counsel claims. Petitioner, however, has submitted no affidavit or other evidence that his trial counsel would have testified favorably to his claims. *See Martin*, 796 F.2d at 819 ("[H]ypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). Further, Appellate counsel stated he did not obtain testimony from trial counsel because he was concerned that trial counsel would testify adversely to Petitioner's interests. (Petitioner's March 16, 2007, Motion Admitting Relevant Evidence, Ex. 8). Petitioner's claim should be denied.

**(M)   Motion for New Trial**

Petitioner argues his counsel was ineffective because he unsuccessfully argued that the court erred in denying his motion for new trial. Petitioner states that counsel knew the claim would not be granted because the evidence presented at the motion for new trial was known to Petitioner at the time of trial. Although the appellate court denied Petitioner's trial error claim, Petitioner has failed to show he was prejudiced by appellate counsel's argument. Petitioner's claim should be denied.

**(N)   Prosecuting Appeal**

Petitioner argues his appellate counsel was ineffective because he did not intend to prosecute a viable appeal. He states: (1) his attorney was required to re-submit his brief for failure to comply with Texas Rule of Appellate Procedure 38.1;[3] (2) the appellate brief was intended to prevent Petitioner from submitting his own *pro se* brief; (3) counsel failed to submit

---

[3]Rule 38.1 lists the requirements for appellate briefs.

a complete trial record to the appellate court; and (4) counsel failed to interview or prepare the witnesses for Petitioner's motion for new trial.

Petitioner has failed to show his counsel did not intend to pursue Petitioner's appeal. Although counsel failed to submit certain items when he filed the appeal, the appellate court allowed counsel to file an amended brief. The appellate court considered Petitioner's appeal on the merits and did not find that the record was incomplete. Petitioner also was not entitled to file *pro se* motions, while he was represented by counsel. *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996) (finding a criminal appellant waives his right present pro se briefs on direct appeal by accepting the assistance of counsel). Finally, Petitioner has not stated what other preparation of witnesses his counsel should have done for the motion for new trial. Petitioner's claims should be denied.

**3.      Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' decision to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION:**

For the foregoing reasons, the Court recommends that Petitioner's habeas corpus petition

pursuant to 28 U.S.C. § 2254 be denied with prejudice.

Signed this 16th day of June, 2008.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).